IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Case No. 1:20-cv_____ |
| $230,965.00 U.S. CURRENCY, | ) |
| AND | ) |
| $150,121.00 U.S. CURRENCY, | ) |
| **Defendants** *in Rem.* | ) |

**COMPLAINT FOR FORFEITURE IN REM**

COMES NOW the plaintiff, United States of America, by and through its counsel, G. Zachary Terwilliger, United States Attorney for the Eastern District of Virginia and by Annie Zanobini, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**NATURE OF THE ACTION**

1. The United States brings this action *in rem* seeking the forfeiture of all right, title and interest in $230,965.00 U.S. Currency and $150,121.00 U.S. Currency (collectively "defendant currency"), involving violations of 21 U.S.C. §§ 841 and 846. The defendant property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6). 21 U.S.C. § 881(a)(6) provides that "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an

1

exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter," are subject to forfeiture.

## THE DEFENDANTS IN REM

2.The $230,965.00 U.S. Currency was seized from Breanna Brantley ("Brantley") at Ronald Reagan National Airport on May 19, 2020, by federal officers.   Ronald Regan National Airport is located in Arlington County, Virginia.   The defendant property is currently in the possession of the Drug Enforcement Administration in the Eastern District of Virginia.

3.The $150,121.00 U.S. Currency was seized from a person (Person #1) at Ronald Reagan National Airport on May 19, 2020, by federal officers. The defendant property is currently in the possession of the Drug Enforcement Administration in the Eastern District of Virginia.

## JURISDICTION AND VENUE

4.Plaintiff brings this action *in rem* in its own right to forfeit the defendant currency.   This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).   This Court has jurisdiction over this action in particular pursuant to the applicable forfeiture statute, 21 U.S.C. § 881.

5.This Court has *in rem* jurisdiction over the defendant currency under 28 U.S.C. § 1395(b), as the currency was found within the Eastern District of Virginia.   Moreover, the Court will have control over the defendant currency upon the service of an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the defendant currency pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(b).

6.      Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1395(b), because the defendant currency is located within this district.

## BASIS FOR FORFEITURE

7.      All moneys furnished or intended to be furnished by any person in exchange for a controlled substance or proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate a controlled substance exchange in violation of Subchapter I, Chapter 13 of Title 21 of the United States Code, are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## FACTS

A.      <u>May 19, 2020 Cash Seizure</u>

8.      On May 19, 2020, Drug Enforcement Administration ("DEA") agents and taskforce officers (hereinafter referred to interchangeably as "officer(s)") deployed a certified, trained narcotics detection canine in the baggage basement area of Ronald Reagan National Airport (DCA) where checked baggage from American Airlines Flight 1275 from DCA to Los Angeles (LAX) was located.

9.      The canine certified to detect the odor of controlled substances alerted to a black/silver hard cased roller bag belonging to "BRANTLEY/BREANNA" with a bag tag number 5001456588.

10.     An officer removed the checked bag from the sorting area and maintained complete care, custody, and control of the bag.  The officer carried the bag to gate 25—the departure gate for Flight 1275.

11.     One of the officers saw two subjects, later identified as Brantley and Person #1, sitting within the area of gate 25.  Brantley appeared to notice that the officer was in possession

of the checked bag. She pointed to the bag, and appeared to say something to Person #1. Brantley had one small, teal, roller suitcase and Person #1 had one small, blue, roller suitcase. Brantley then voluntarily walked over to the officers holding the checked bag. The officer identified himself as a taskforce officer with DEA by showing his credentials to Brantley.

12. At the same time as one officer spoke with Brantley, another officer approached Person #1, identified himself as a Special Agent with the DEA, and showed Person #1 his credentials. Person #1 consented to a dog sniff of a black backpack he was wearing. The canine certified to detect the odor of controlled substances alerted to the backpack. Person #1 consented to a search his backpack, but no drugs or currency was found. Person #1 boarded the plane.

13. Brantley stated that the black checked bag belonged to her, and that she packed her own bag.

14. Brantley told officers she was going to Los Angeles, California for her business.

15. Brantley told officers that she was not in possession of any large amounts of U.S. currency, drugs, or narcotics.

16. Brantley consented to the search of her checked bag. In the checked bag, officers found a large yellow "Scotch" brand envelope, and Brantley consented to the search of the envelope. Inside the envelope, officers found a large vacuum-sealed bag containing bundles of U.S. currency wrapped in rubber bands.

17. When asked how much money was in the checked bag, Brantley said, "a lot."

18. Brantley confirmed that the teal carry-on roller suitcase belonged to her, and she consented to a search of her carry-on bag. In the small carry-on roller bag, officers found sealed

4

large yellow "Scotch" brand envelopes, and Brantley consented to a search of the envelopes. Inside the large "Scotch" envelopes in the carry-on bags, officers saw bundles of currency wrapped in rubber bands sealed in vacuum-sealed bags.

19. After officers discovered the currency, officers asked Brantley why she lied when they initially asked her whether she was carrying any U.S. currency. Brantley said, "I never said that; you're twisting my words." The officer reminded Brantley that he asked her whether she had any U.S. Currency shortly after she initially approached him. This time, Brantley agreed that she had been asked earlier and that she had lied.

20. Brantley told officers that the cash was for her business, "Major Life Entertainment," for an upcoming concert. She stated that she works at "Major Life" and has worked there as an event planner for two years. She showed officers a webpage--majorlifeent.com.

21. When asked how much she made annually, Brantley said "enough."

22. When asked who she banks with, Brantley said she had an account with Ace Check Cashing.

23. Brantley told officers she would be staying in Los Angeles for two weeks, but that she had not purchased a return ticket. She also told officers she would be staying at a hotel, but that she had not booked a room yet. She told officers she would be using Uber to get around.

24. When asked for a contact number to verify her employment, Brantley told the officer that he could use her phone number to verify employment.

25. After speaking with Brantley, Person #1 was asked to exit the plane with his carry-on luggage. Person #1 voluntarily exited the plane carrying a small, blue, roller suitcase.

5

Person #1 consented to a search of his carry-on bag.

26. A search of the blue carry-on bag revealed numerous bundles of U.S. currency in vacuum-sealed bags. The currency was wrapped in rubber bands, sealed in a vacuum sealed bag, and then sealed in the large yellow "Scotch" brand mailing envelopes. The U.S. currency was packed the same way as the money recovered from Brantley's bags.

27. Person #1 told officers that he was flying to Los Angeles to hang out with friends. He told officers he would be staying with his cousin for one week, but that he did not know where his cousin lived. He would not provide his cousin's name. He also said that he had not booked a return flight yet.

28. Person #1 told officers that he currently does not have a job. He said he previously worked at Denny's in Washington D.C. for two years and recently quit in March of 2020. Person #1 told the officer that he made a lot of money because he was a really good server.

29. For the money recovered from his suitcase, Person #1 told the officers that he did not know where the money came from or how much money he had. When asked if the money belonged to Brantley or to him, Person #1 did not answer the question. When asked if anyone would be looking to hurt him if the money was seized, Person #1 did not answer. When the officer repeated the question, Person #1 replied, "I'm good."

30. Person #1 told officers that whatever Brantley had in her suitcase was her business, and had nothing to do with him.

31. Person #1 told officers that he did not have a bank account.

32. When asked whether he had ever been arrested, Person #1 said he received a gun

charge in Washington D.C. but that he had never been arrested for a drug charge.

33. When asked if he could think of any reason why the DEA should not take his money as drug proceeds, Person #1 said, "I don't know."

34. The officer asked Brantley if the bulk currency in the possession of Person #1 was also for the same company, and Brantley said that Person #1 also worked for "Major Life." When asked about Person #1's position in the company, Brantley told officers to go ask Person #1.

35. Officers queried the Maryland wage database and found no record of wages for Brantley or Tucker.

36. The DEA then seized the $150,121.00 U.S. currency found in Person #1's suitcase. The officer maintained complete care, custody, and control of the currency and transported it back to the DEA office located at Reagan National Airport until it was transferred to Loomis, Springfield, Virginia for an official count

37. On May 19, 2020, DEA seized and took custody of the $230,965.00 currency seized from Brantley. An officer maintained complete care, custody, and control of the currency until it was transported to Loomis, Springfield, Virginia for an official count.

38. On July 15, 2020, notice of seizure was mailed to Brantley.

39. On August 19, 2020, DEA received a claim from Brantley for both the $230,965.00 U.S. Currency and the $150,121.00 U.S. Currency seized on May 19, 2020. In her claim, Brantley asserts the defendant currency belongs to her and represents her "self-employed income." Specifically, she claims that the defendant currency is money that she made and saved since February of 2019.

  B.  <u>Major Life Entertainment</u>

  40.  Brantley and Person #1 told officers that they are associated with Major Life Entertainment.  Major Life Entertainment has had the same concert announcement posted on their website since early 2020—Friday, August 7, 2020.  According to their website, the company has not put on any concerts or shows that would explain the currency seized in May of 2020.  Officers have seized cash at Reagan National Airport from other individuals claiming to be associated with Major Life Entertainment, including $58,005.00 U.S. Currency seized on July 16, 2018, from an individual (Person #2).

  41.  On July 16, 2018, Person #2 told officers that he is a co-CEO of Major Life Music, formerly Team Major, located in Washington, D.C.  He described his business as that of a club promoter, and stated that the business's website is majorlifemusic.com.  Specifically, he said that he promotes parties and artists at DC nightclubs including Nightclub #1, Nightclub #2, and Nightclub #3.  Person #2 said he promotes every Tuesday and Thursday at Nightclub #2 and every Wednesday at Nightclub #1.  He also told agents he had an event on July 18, 2018, at Nightclub #1, and that most of U.S. currency he had with him came from an event he hosted at Nightclub #1 on the Fourth of July weekend.  Person #2 said for the July 4th event he collected the cover charge and Nightclub #1 kept the bar charge.  Officers reached out to Nightclub #1, which indicated that they have never heard of nor booked events for Major Life Music or dealt with Person #2.  Nightclub #1 told agents that they pay promoters by check approximately one week after the event, and that they did not hold any events on the weekend of July 4th or the next week in conjunction with Major Life Music or Person #2.  Officers also reached out to Nightclub #3 and the owner told officers that the club has never worked with Major Life Music

or Person #2.   Person #2 also said that Major Life Music contracted with Artist #1 to perform on Sunday, August 31, 2018, in Washington, D.C. and showed the officer a contract.   The contract had the artist listed under another name in one location and Artist #1 in another.   In addition, the contract listed the day of the concert as "Sun. August 31, 2018," even though August 31, 2018 was a Friday, and the location of the concert as "Forumn LA."   An internet search revealed that Artist #1 was scheduled to perform at Z107.9 Summ Jam on Friday, August 31, 2018, at the Wolstein Center in Cleveland, Ohio.

42. An internet search revealed that Majorlifeent.com has a link to Major Life Entertainment's facebook page.   Major Life Entertainment's facebook page lists their website as majorlifemusic.com.

43. On April 28, 2020, two bags on a flight from Los Angeles LAX to Dulles Airport (IAD) were not initially claimed by any passenger on the flight.   A trained narcotics canine alerted to both bags, and a subsequent search of each bag revealed that each bag contained approximately 27 pounds of marijuana.   Later that day, an individual (Person #3) returned to the airport with Person #2 to claim one of the bags.   Person #3 was arrested and charged with possession with intent to distribute marijuana, in violation of Virginia Code § 18.2-246.1, and transporting of marijuana into the commonwealth, in violation of Virginia Code § 18.2-248.01.   The case is still pending in Loudoun County, Virginia.

44. As to the second bag that contained approximately 27 pounds of marijuana, another individual's name (Person #4) was on the bag tag.   Person #4 was later charged with possession with intent to distribute marijuana, in violation of Virginia Code § 18.2-246.1, and transporting of marijuana into the commonwealth, in violation of Virginia Code § 18.2-248.01.

Agents reviewed video from LAX before Person #3 and Person #4 boarded their flight to IAD. That video appeared to show Person #3 and Person #4 together at LAX.

45. On July 21, 2020, $75,000 was seized from another person (Person #5). A trained narcotics detection canine alerted to Person #5's checked bag and to the currency in the bag. Person #5 told officers that he works in the music industry, specifically, that he works for Major Life Entertainment. When asked why he was carrying so much money, Person #5 said his business partner, Person #2, who lives in DC, gave him the money. Specifically, Person #5 said he made the money from a concert by Artist #2 in January 2020, and that they were going to re-invest the money in another concert in California. When asked for Person #2's phone number, Person #5 looked in his cell phone and showed officers a contact.

**PRAYER FOR RELIEF**

46. Based on the foregoing, the defendant currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as moneys furnished or intended to be furnished in exchange for a controlled substance or proceeds traceable to such an exchange, or as moneys used or intended to be used to facilitate a controlled substance exchange in violation of Subchapter I, Chapter 13 of Title 21 of the United States Code.

WHEREFORE, the United States prays that due process issue to enforce the forfeiture of the defendant currency and that due notice be given to all interested parties to appear and show cause why said forfeiture of the defendant currency should not be decreed, that the defendant currency be condemned and forfeited to the United States to be disposed of according to law, and for such other and further relief as this Honorable Court may deem just and proper.

DATED this 17th day of November 2020.

Respectfully submitted,

G. Zachary Terwilliger
UNITED STATES ATTORNEY

By:   /s/Annie Zanobini
Annie Zanobini
Assistant United States Attorney
California Bar No. 321324
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office Number: (703) 299-3903
Facsimile Number: (703) 299-3982
Email Address: annie.zanobini2@usdoj.gov

## VERIFICATION

I, Walter Johnson, Task Force Officer of the United States Drug Enforcement Agency, declare under penalty of perjury as provided by 28 U.S.C. § 1746, that the foregoing Complaint for Forfeiture in Rem is based on information known by me personally and/or furnished to me by various federal, state, and local law enforcement agencies, and that everything contained herein is true and correct to the best of my knowledge.

Executed at DULLES, Virginia, this 17TH of November, 2020.

_____
Walter Johnson, Task Force Officer
U.S. Drug Enforcement Administration